

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/LZ/AXB
F. #2022R01030

*610 Federal Plaza*
*Central Islip, New York 11722*

February 28, 2025

**By ECF**

The Honorable Joanna Seybert
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Samuel Miele
                Criminal Docket No. 23-327 (JS)

Dear Judge Seybert:

      The government respectfully submits this letter in advance of the sentencing hearing scheduled for March 7, 2025, in the above-referenced case. On November 14, 2023, the defendant Samuel Miele pleaded guilty to Count One of the Indictment, charging him with committing wire fraud, in violation of 18 U.S.C. § 1343. The Probation Department has determined the defendant's advisory range of imprisonment under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") to be 27 to 33 months. *See* Addendum to the Presentence Investigation Report ("PSR Add.") ¶ 30. For the reasons set forth below, the government respectfully submits that a carceral sentence below the applicable Guidelines range would be sufficient but not greater than necessary to achieve the goals of sentencing in this case.

    I.    Relevant Facts

        a.    The Offense Conduct

      As stated in the Presentence Investigation Report, dated March 21, 2024 ("PSR"), the defendant defrauded campaign contributors while employed as a fundraiser for the congressional campaigns of George Anthony Devolder Santos. *See* PSR ¶ 4. The defendant worked for Devolder Santos's campaigns during both the 2020 and 2022 election cycles. *See* PSR ¶ 5. Devolder Santos lost his first election in November 2020, but he was elected in November 2022 to represent New York's Third Congressional District in the U.S. House of Representatives. *See* PSR ¶ 4.[1]

---

[1] Devolder Santos pleaded guilty on August 19, 2024, to one count of wire fraud and one count of aggravated identity theft. *See United States v. Devolder Santos*, Case No. 23-

While working as a fundraiser for Devolder Santos's campaigns, the defendant was responsible for soliciting high-ticket campaign contributions. In telephone calls and emails to potential contributors, between approximately August 2021 and December 2021, the defendant impersonated the Chief of Staff to the Speaker of the U.S. House of Representatives ("Victim No. 1"), a person known and respected within donor circles. The defendant created a fictitious email account bearing the first letter and full last name of Victim No. 1. The defendant used that email account to send fundraising emails to more than a dozen potential campaign contributors falsely purporting to be Victim No. 1 and endorsing Devolder Santos (which implied the Speaker's support for Devolder Santos as well). *See* PSR ¶¶ 9-11. The defendant signed the fundraising emails using Victim No. 1's full name and official title. *See* PSR ¶ 10. Through those false representations, the defendant raised approximately $6,500 for the Devolder Santos campaign from two victims, receiving a commission of 15% of that amount for his efforts. *See* PSR ¶ 11.

In addition to the above-described scheme, between approximately April 2021 and April 2022, the defendant used the credit card billing information of at least five victims to make campaign contributions without the victims' knowledge or authorization. *See* PSR ¶ 11. To circumvent contribution limits and to conceal the true source of the funds, the defendant associated those charges with the names of other people, including his own, without the prior knowledge or authorization of the persons whose identities he stole. Through this scheme, the defendant caused unauthorized contributions totaling at least $40,600 to be made to congressional campaigns and, again, received a commission on each fraudulent contribution. *See id.* The defendant also used the credit card billing information of one campaign contributor ("Victim No. 2") to make approximately $62,071 in unauthorized charges for the defendant's personal benefit, including for his rent and homeowner association fees.[2] At the time the PSR was prepared, Victim No. 2 was 85 years old, *see* PSR ¶ 11, and suffered from memory loss.

---

CR-197 (JS), ECF No. 102. He is scheduled to be sentenced on April 25, 2025. Also, in that matter, Nancy Marks, who served as Devolder Santos's campaign treasurer during the 2020 and 2022 election cycles, pled guilty to one count of conspiracy to commit offenses against the United States on October 5, 2023. *See United States v. Nancy Marks*, Case No. 23-CR-197 (JS), ECF No. 43. She is scheduled to be sentenced on May 8, 2025.

[2] Separate and apart from, and in addition to, the criminal conduct described above, the defendant also persuaded Victim No. 2 to send him $470,000 between approximately October 2021 and April 2022. The defendant told Victim No. 2 that the defendant would use Victim No. 2's money to promote causes associated with the Republican Party. By the time he was charged in the instant matter, in August 2023, however, the defendant had not used Victim No. 2's money to promote Republican causes. Accordingly, the defendant agreed in the plea agreement to return $470,000 to Victim No. 2 in advance of sentencing, and he has done so.



II.     Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the Addendum to the PSR, dated April 10, 2024.  The defendant's adjusted offense level is 18 and the defendant has a criminal history category of I, resulting in an advisory Guidelines range of 27 to 33 months' imprisonment.  *See* PSR Add. ¶ 30.

3

III. Sentence Recommendation

 a. Legal Standard

The Sentencing Guidelines are advisory, not mandatory. *See United States v. Booker*, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in *Booker* that sentencing courts must consider the Guidelines in formulating an appropriate sentence. *See id.* In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a procedure for sentencing courts to follow in light of *Booker*:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

*Id.* at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." *Id.* at 49-50 (citation and footnote omitted).

 b. A Below-Guidelines Sentence is Appropriate

The government submits that a prison sentence below the advisory Guidelines range would be sufficient but not greater than necessary to reflect the seriousness of the defendant's crime, to deter similar criminal conduct, and to promote respect for the law.

The conduct here was indeed serious. Crimes related to campaign finance and election law threaten the integrity of our democracy and undermine the public trust. Over a one-year period, the defendant went on a fraudulent spree, engaging in multiple criminal schemes to benefit himself and his employer, Devolder Santos. The defendant stole the identity of one of the highest-ranking staffers in the government of the United States—the Chief of Staff to the Speaker of the U.S. House of Representatives—and fraudulently traded off his name and reputation to try to secure money for the defendant's client and profit for himself. The defendant engaged in fraud because he had the opportunity to do so, having been given access to victims' contact and billing information, and he stopped committing fraud only when this access was taken from him. In this time, he caused more than $100,000 in unauthorized charges on victims' credit cards, all while fraudulently impersonating still other victims. A sentence of incarceration is necessary to reflect the seriousness of the offense conduct. *See* 18 U.S.C. § 3553(a)(2)(1).

The Court must also take into account the need to deter future criminal conduct, pursuant to 18 U.S.C. § 3553(a)(2)(B). "The need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, Case No. 16-CR-457-1 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018). White collar crime, like the multiple fraudulent schemes committed by the defendant, is "easy . . . to commit but . . . difficult . . . to catch. Others similarly situated to the defendant must therefore be made to understand that when you get caught, you will go to jail." *United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012); *see also*

*United States v. Stein*, No. 09-CR-377 (JBW), 2010 WL 678122, at *3 (E.D.N.Y. Feb. 25, 2010) ("Persons who commit white-collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed. A serious sentence is required to discourage such crimes.").

The Court should also consider the history and characteristics of the defendant and his timely acceptance of responsibility. While the defendant is not entitled to a two-point reduction in his Guidelines level as a zero-point offender due to the application of the vulnerable victim enhancement,[5] the government concedes that it is nevertheless appropriate for the Court to consider the defendant's lack of criminal history.



IV.     Restitution

At the time of his guilty plea, the defendant stipulated to mandatory restitution in the amount of $109,171. *See* PSR ¶ 13. The government encloses herein for the Court's consideration a proposed order of restitution. Because Exhibit A to the proposed order identifies the names and addresses of the defendant's victims, as well as the amounts of their respective losses, the government respectfully requests that Exhibit A be filed under seal. The defendant does not object to the proposed order.

---

[5] Section 4C1.1 of the Guidelines provides for a two-point reduction in a defendant's total offense level if they meet 11 conditions. Because, here, the defendant received a vulnerable victim enhancement under Section 3A1.1, he is ineligible for this reduction. *See* U.S.S.G. § 4C1.1(a)(9).

V.    Conclusion

For the reasons stated above, the government respectfully submits that a below-Guidelines sentence is reasonable and appropriate in this case.

        Respectfully submitted,

        JOHN J. DURHAM
        United States Attorney

By:   /s/
        Ryan C. Harris
        Anthony Bagnuola
        Laura Zuckerwise
        Assistant U.S. Attorneys

        John P. Taddei
        Senior Litigation Counsel

cc:    Kevin Marino, Esq. (by Email)
       John Tortorella, Esq. (by Email)
       Clerk of the Court (JS) (by Email and ECF)