# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 23-cr-00327-1-JS** |
| **vs.** | |
| **SAMUEL MIELE,** | |
| **Defendant.** | |

---

## MEMORANDUM OF SENTENCING CONSIDERATIONS SUBMITTED ON BEHALF OF DEFENDANT SAMUEL MIELE

---

**MARINO, TORTORELLA & BOYLE, P.C.**
**437 Southern Boulevard**
**Chatham, New Jersey 07928–1488**
**(973) 824–9300**
*Attorneys for Defendant*
*Samuel Miele*

**On the Memo:**

    **Kevin H. Marino, Esq.**
    **John D. Tortorella, Esq.**
    **John A. Boyle, Esq.**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..............................5

LEGAL ARGUMENT.......................................................................................13

I.    LEGAL STANDARD. .............................................................................13

II.   CONSIDERATION OF THE § 3553(A) FACTORS WARRANTS
      IMPOSITION OF A NON-CUSTODIAL SENTENCE...............................16

   A. The Nature of the Offense..................................................................17

   B. Miele's Characteristics Warrant A Non-Custodial Sentence.........................18

      1.   Miele's Acts Of Generosity And Empathy Represent His True
           Character. ..................................................................................19

      2.   Miele Acceptance Of Responsibility And The Assistance He
           Gave The Government Demonstrate That His Offense Conduct
           Was An Anomaly For Which He Feels Deep Remorse. .......................23

   C. A Non-Custodial Sentence Is Sufficient But Not Greater Than
      Necessary To Promote The Purposes Of 18 U.S.C. § 3553(a)(2). ...............25

   D. A Non-Custodial Sentence Is Consistent With The Need To Avoid
      Unwarranted Sentencing Disparities.............................................................29

   E. That Restitution And Forfeiture Has Been Fully Paid In This Case
      Supports Imposition Of A Sentence Of Probation........................................30

CONCLUSION ....................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Arakelian v. United States*,
   No. 08-3224, 2009 U.S. Dist. LEXIS 6509 (S.D.N.Y. Jan. 28, 2009) ...............13

*Gall v. United States*,
   552 U.S. 38 (2007) ....................................................................... 15, 26

*Kimbrough v. United States*,
   552 U.S. 85 (2007) ...............................................................................15

*Rita v. United States*,
   551 U.S. 338 (2007) .............................................................................15

*United States v. Arias*,
   249 F. App'x 265 (2d Cir. 2007)............................................................13

*United States v. Booker*,
   543 U.S. 220 (2005) ............................................................................13

*United States v. Bouloute*,
   185 F. App'x 102 (2d Cir. 2006)...........................................................18

*United States v. Broderson*,
   67 F.3d 452 (2d Cir. 1995) ..................................................................31

*United States v. Cavera*,
   550 F.3d 180 (2d Cir. 2008) ................................................... 13, 15, 16

*United States v. Crook*,
   9 F.3d 1422 (9th Cir. 1993) .................................................................31

*United States v. Crosby*,
   397 F.3d 103 (2d Cir. 2005) ................................................................15

*United States v. Fernandez*,
   443 F.3d 19 (2d Cir. 2006) ........................................................... 15, 23

*United States v. Gall*,
   552 U.S. 38 (2007) .............................................................................13

*United States v. Johnson*,
    2017 U.S. Dist. LEXIS 68989 (E.D.N.Y. Apr. 27, 2017).....................................18

*United States v. Kim*,
    364 F.3d 1235 (11th Cir. 2004) ..........................................................................31

*United States v. Maynard*,
    743 F.3d 374 (2d Cir. 2014) ...............................................................................30

*United States v. Norman*,
    776 F.3d 67 (2d Cir. 2015) .................................................................................13

*United States v. Olaiya*,
    446 F. App'x 388 (2d Cir. 2011) ................................................................. 15, 23

*United States v. Singh*,
    No. 13-cr-408, 2014 U.S. Dist. LEXIS 100613 (E.D.N.Y. July 23, 2014) ........28

*United States v. Smith*,
    697 F. App'x 31 (2d Cir. 2017)..........................................................................13

*United States v. Thurston*,
    544 F.3d 22 (1st Cir. 2008) ................................................................................18

## Statutes

18 U.S.C. § 1343 ...................................................................................................17

18 U.S.C. § 3553(a) ...................................................................................... passim

18 U.S.C. § 3553(a)(1)................................................................................ 14, 15, 23

18 U.S.C. § 3553(a)(2) .................................................................................. passim

18 U.S.C. § 3553(a)(6)...........................................................................................29

18 U.S.C. § 3553(a)(7)...........................................................................................30

18 U.S.C. § 3663A .................................................................................................30

18 U.S.C. § 3664 ...................................................................................................30

**<u>Rules and Regulations</u>**

U.S.S.G. § 5K1.1............................................................................................................14

## **PRELIMINARY STATEMENT**

This memorandum of sentencing considerations and the accompanying letters and exhibits are respectfully submitted on behalf of Defendant Samuel Miele ("Miele"), who will come before the Court on Friday, March 7, 2025, for sentencing on one count of wire fraud. Miele pleaded guilty to causing individuals' credit cards to be charged without their authorization and soliciting funds from an elderly individual under the false pretense that those funds would be used to support identified political causes.

Miele is a young man with no prior criminal history and a reputation for kindness and generosity. As the Government has acknowledged in its *Fernandez* letter, he immediately acknowledged his wrongdoing, cooperated with this investigation by meeting with and providing documents to the Government on more than one occasion, and has fully satisfied his forfeiture and restitution obligations.

The United States Probation Office ("Probation") has calculated Miele's total offense level as 18, which results in a Guidelines range of 27 to 33 months. Miele does not dispute Probation's offense-level calculation but respectfully submits that consideration of the 18 U.S.C. § 3553(a) factors, including his age, his history and characteristics and the circumstances of his offense, makes clear that a guideline sentence would be greater necessary to accomplish the legitimate goals of sentencing.

1

In addition to Miele's prompt and significant cooperation with the Government and his full satisfaction of his forfeiture and restitution obligations, a noncustodial sentence is urged by the dozens of individuals who know Miele best and have submitted letters attesting to the manner in which he has positively impacted their lives and the lives of many others. For example, Miele's mother describes his commitment to his aging grandparents, recounting that he visited them three to four times a week throughout the final months of their lives, and notes his volunteer service at a New Jersey food bank. (Ex. 15, Lisa Miele letter at 1.) Similarly, Djoman Cyrille Ncho, a cook at a New York City restaurant with whom Miele struck up a friendship, attests that even to this day, "Sam still doesn't hesitate to ask how I AM doing or if I NEED anything." (Ex. 19, Djorman Ncho letter.)

Growing up, Miele was always interested in pursuing a career in politics, which he viewed as the best way to make a difference in the world. As his cousin Cassandra Mazzucco relays, Miele "gravitated toward politics at a young age," which "made sense for Sammy." (Ex. 10, Cassandra Mazzucco letter.) As a result, he began laying the groundwork for a career in politics while still a student at St. John's University, serving an internship with a political leader. Then, after graduating college, Miele secured an internship with Pete Sessions, a Congressman from Texas, and moved to Washington, D.C. in June 2018. Upon his return to New Jersey, Miele supported himself by working for his family's sanitation business, but

2

he never gave up on his dream of working in politics. Eventually, he began working for Josh Eisen, a congressional candidate in New York. Eisen introduced Miele to George Santos, another New York congressional candidate, and Miele began working for Santos in 2020 as a deputy campaign manager and fundraiser.

Unfortunately, once he was tasked with raising funds for Santos's campaign, Miele allowed his ambition and drive to succeed in politics to overwhelm his good judgment, common sense and the ethical principles that had been instilled in him by his parents from an early age. In order to increase the amount he was able to raise, Miele began to misrepresent his identity by impersonating a senior staff member for Kevin McCarthy, then House Minority Leader and later Speaker of the House, when soliciting campaign contributions and to charge additional sums to donors' credit cards without their knowledge or authorization. Miele acknowledges the seriousness of that conduct, but it is truly an aberration and entirely inconsistent with the man he is and how he has lived his life.

As the many letters of support annexed to this Sentencing Memorandum make clear, Miele has demonstrated—beginning in his childhood and continuing through his adolescence and into his adult life—a remarkable degree of generosity, compassion, and commitment to everyone around him, including not just his family, friends and fraternity brothers, but also neighbors he barely knows and even total strangers. Examples of Miele's kindness and generous spirit range from small

deeds—retrieving the paper for an elderly neighbor, conducting mock interviews and resume workshops for underclassmen, and shuttling friends to and from the train station—to far more significant ones—paying fees and dues for fraternity brothers who could not afford those costs themselves and allowing a friend who could not support himself financially to move into Miele's closet-sized apartment in New York City and sleep on his couch.  Both prior to and in the time since his indictment, Miele has embodied what it means to be a man for others and has done so without accolades or recognition.

When one considers the circumstances of Miele's offense and his unique personal history and characteristics, it becomes clear that the conduct that led to his conviction was the product of extremely poor judgment resulting from an outsized desire to make a name for himself in the world of politics and, frankly, associating with the wrong people at a young age.  When his misconduct came to the Government's attention, he promptly acknowledged his wrongdoing, assisted the Government by meeting with and providing information and documents to the Assistant United States Attorneys investigating Mr. Santos,  and made full restitution of the losses suffered by his victims.

Sam Miele is a young man who made a bad mistake.  But his criminal conduct is not indicative of the person he is.  Rather, it represents a complete departure from what has otherwise been a young life marked by integrity, kindness and service to

others.  As a result of that deviation from the manner in which he has always conducted himself, Miele has suffered intense media scrutiny, had his career and reputation destroyed, caused his family intense emotional pain and anguish, and experienced enormous shame and embarrassment in the community.  Miele recognizes that he has no one but himself to blame for what has happened to him, but those severe consequences support the conclusion that a non-custodial sentence is a just and appropriate punishment for someone who has spent much of his young life supporting and caring for others and is committed to making amends for his misconduct.

For these reasons, amplified below, we respectfully request that your Honor impose a non-guidelines sentence of probation with a period of home confinement, community service, and mandatory counseling.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Samuel Miele's Background.

On November 14, 2023, Miele, then 27-years old, pleaded guilty to one count of wire fraud relating to the solicitation of campaign contributions under false pretenses by impersonating the Chief of Staff to Congressman Kevin McCarthy, then minority leader of the House of Representatives.  As outlined above and detailed below, the conduct that led to Miele's guilty plea is a complete anomaly for a young man who has exemplified selfless generosity and overwhelming compassion.

Samuel Miele was born in Green Village, New Jersey on March 22, 1996. (PSR at 2.)  He is the son of Paul and Lisa Miele.  (PSR, ¶ 36).  Paul Miele owns a sanitation company in Maplewood, New Jersey and Lisa Miele is a homemaker. (*Id.*)  Miele's parents are aware of his arrest and, while devastated by his criminal prosecution, remain entirely supportive of him, as they understand his criminal conduct is an aberration for an otherwise "good kid from a good family."  (*Id.*, ¶ 37.) Miele's siblings, Amanda and Benjamin, echo their parent's sentiments and offer full-throated support for their younger brother.  (*Id.*, ¶ 38.)  Indeed, Amanda notes that it "has become more and more evident that Sam has realized the weight of his actions and the repercussions it will have moving forward in his career and life overall" and hopes "that this crime and sentencing will not completely derail his future, but become a defining moment for him to recognize his faults and make changes to better himself."  (Ex. 12, Amanda Miele letter.)  Benjamin similarly states that his brother "has expressed what a tremendous mistake he has made in the past couple years and has been as hard as one can be to his self being."  (Ex. 13, Benjamin Miele letter.)

Throughout his childhood, Miele's parents taught him and his siblings the importance of working hard, respecting others and doing the right thing.  (Ex. 15, Lisa Miele letter; Ex. 16, Paul Miele letter.)  As his cousin Cassandra Mazzucco attests, Miele recognized that he had a good childhood and incorporated his parent's

values into his life and thereby developed a strong desire to help others.  (Ex. 10, Cassandra Mazzucco letter.)  That belief in the importance of respecting others and doing the right thing has deeply impacted how Miele lives his life, contributing to his desire to pursue a career in politics in the hope of one day helping others as a congressman or other elected official.  (*Id.*)

Miele attended Chatham High School in New Jersey, where he played on the golf team.  (Ex. 7, Rena and Michael Leo letter).  He integrated his love of golf with his passion for helping others by mentoring new and underclassmen golfers as a leader of the varsity team.  (*Id.*)  He did not limit his generosity to friends and teammates, but extended it to the community by helping Michael Leo, husband of a secretary at the High School, run a charity golf event.  (*Id.*)  Miele also participated in the Key Club at Chatham High School, a service organization that helps senior citizens, Chatham's police and recreation departments, and different neighborhood associations.[1]  (*Id.*)  He volunteered dozens of hours each year in high school to the Key Club, an experience that helped to shape his generous spirit.[2]

Miele's experience at Chatham High School helped solidify his desire to help others, which he continued to nurture when he attended St. John's University from 2014 through 2018.  (PSR, ¶ 46; Ex. 6, Nathan Glanton letter.)  As explained by his

---

[1] *Student Clubs & Activities*, CHATHAM HIGH SCHOOL (Oct. 11, 2024, 12:05PM) https://www.chatham-nj.org/o/chs/page/student-clubs-activities
[2] *Id.*

close college friend and fraternity brother Nathan Glanton, Miele believed that the best way to help others and "make a positive impact on the world" was to enter politics, and thus he pursued a bachelor's degree in government and politics.  (*Id.*) At St. John's, Miele carried out that belief by interning with a political leader and joining a fraternity, Kappa Sigma, (Ex. 15, Lisa Miele letter), that is focused on four pillars: Fellowship, Leadership, Scholarship, and Service.[3]  As their letters of support make clear, Miele's fraternity brothers, family, friends, and neighbors believe that he embodies these values through the generosity and compassion he displays in his interactions with others.  (*See*, *e.g.*, Ex. 1, Dr. Gary Bronson letter ("a number of students would always stand out as exceptionally intelligent, sincere, and reliable . . . Sam made this same impression. Later actions confirmed it."); (Ex. 17, Anthony Molinaro letter ("Sam is not thinking of himself . . . [he is] thinking of his mother, father, siblings, colleagues, and all of those he has affected and disappointed.").)

Miele's character was shaped significantly by his experiences in Kappa Sigma, where he learned the meaning of fellowship and leadership through acts of service, both large and small.  For example, Miele organized charity golf events for the Wounded Warriors Project, often skipping fraternity social events at night so he

---

[3]  *About Us*, Kappa Sigma Fraternity  (Oct. 11, 2024, 12:05PM) https://www.kappasigma.org/who-we-are/

could wake up early to coordinate with vendors and ensure the event was a success. (Ex. 2, Owen Clifford letter; Ex. 5, Kieran Firth letter). Miele also conducted career workshops with other fraternity brothers to help underclassmen create their first resume or prepare for their first job interview. (Ex. 6, Nathan Glanton letter.) And Miele gave not only his time but also his money to help others in his college community, often paying the dues of fraternity brothers who could not afford the cost themselves. (*Id.*) As his fraternity brothers explain, it was not just the acts that Miele did but also the manner in which he did them; he "never sought recognition," but rather demonstrated a "thoughtfulness and willingness to put others' needs ahead of his own." (*Id.*; Ex. 5, Kieran Firth letter.)

After college, Miele continued to offer support and assistance to those in need. For example, he gave Robert Pilat, a college friend who was unable to "get himself on his feet," a place to live on the couch in Miele's tiny apartment in New York City although "there was barely enough room for one person, much less two." (Ex. 22, Meredith Pilat letter.) Pilat explains that "when [his] family was experiencing a lot of hardship," Miele "took [him] in as a brother and part of his family," an act that demonstrates "the depth of his character and his sincere care for others." (Ex. 23, Robert Pilat letter.) This is emblematic of Miele's good character, as he would "host complete strangers with no hesitation . . . and always go[] the extra mile to make sure his family and friends are more than comfortable." (Ex. 20, Devon O'Donnell

letter.)  Similarly, Djoman Cyrille Ncho, an African immigrant who works as a line cook in a New York City bar, recounts how Miele befriended him and supported him when he experienced racism and disrespect because of his accent and skin color. (Ex. 19, Djoman Ncho letter.)

After graduating from St. John's, Miele secured an unpaid internship with Congressman Pete Sessions of Texas that began in mid-2018.  (PSR, ¶ 52.)  Miele chose to work in politics instead of his family's business because he believed doing so would allow him to make a greater impact on the world.  However, he resigned later in 2018 because the internship was unpaid and he was thus forced to rely on his parents for financial support to live in Washington, D.C.  (*Id.*)  Miele returned to New Jersey and worked for his father's company painting containers located in the company yard.  (PSR, ¶ 52.)  Despite returning home to work for his father, Miele retained a strong interest in pursuing a career in politics and was able to secure a job working as a campaign manager for Josh Eisen, a Congressional Candidate in New York; he worked for Eisen from late 2019 into 2020.  (*Id.*, ¶ 51.)

In early 2020, Eisen introduced Miele to George Santos, who was then a candidate for Congress in New York.  (PSR, ¶ 51.)  In mid-2020, Miele began working for Santos as a deputy campaign manager.  (*Id.*, ¶ 50.)  In January 2021, Miele founded a limited-liability company, the One57 Group, to provide political campaign and fundraising services to Santos's campaign.  (*Id.*, ¶ 49.)  Through the

10

One57 Group, Miele continued working for Santos as a fundraiser and also provided political campaign services, including designing websites, fliers and logos.  (*Id.*)  It was during that time that Miele committed the offense that brings him before this Court, conduct that is entirely inconsistent with the manner in which he has otherwise conducted himself.  (*Id.*)

### B.    The Criminal Charges Against Miele.

On August 15, 2023, the grand jury returned a five-count Indictment against Miele.  (ECF No. 1.)  The Indictment charged him with four counts of wire fraud (Counts 1 through 4) and one count of aggravated identity theft (Count 5) in connection with his solicitation of campaign donations under false pretenses for Santos.  (*Id.*)

As detailed above, Santos was a candidate for election to the United States House of Representatives for New York's Third Congressional District during the 2020 and 2022 election cycles.  (PSR, ¶ 4.)  Miele worked as a fundraiser for Santos during both those elections and received as compensation a 15% commission on all funds he raised.  (*Id.*, ¶¶ 5, 11; Indictment, ¶ 2.)

Between August and December 2021, Miele impersonated an individual named Dan Meyer—who was Chief of Staff for Kevin McCarthy, then House Minority Leader and later Speaker of the House—both in emails and telephone communications with potential donors in order to solicit contributions for Santos's

campaign and enrich himself from the commissions he would receive for those contributions. (PSR, ¶¶ 7, 9; Indictment, ¶ 5.) To facilitate his solicitation efforts, Miele created an email account using Meyer's first initial and last name and then sent emails from that account with Meyer's full name and official title. (PSR, ¶¶ 9-10; Indictment, ¶¶ 5-6.) Through that scheme, Miele solicited campaign contributions from more than a dozen donors. (PSR, ¶ 11; Indictment, ¶ 7.) Miele also used donors' credit cards without their permission to make additional, unauthorized contributions to Santos's campaign. (PSR ¶ 11.)

The specific solicitations charged in the Indictment's four wire-fraud counts were tied to four emails: one on August 19, 2021 (Count One), one on September 21, 2021 (Count Two), and two on October 22, 2021 (Counts Three and Four). (Indictment, ¶ 12.) On November 14, 2023, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11, Miele pleaded guilty to Count One of the Indictment, which charged him with wire fraud based on the August 19, 2021 email. As set forth in the PSR, the total loss amount for which Miele is being held responsible is $109,171. (PSR, ¶ 13.) He agreed to a restitution amount of $109,171 and a forfeiture amount of $69,139. (PSR, ¶¶ 69-70.)

## LEGAL ARGUMENT

### I.   LEGAL STANDARD.

For the last twenty years, the Sentencing Guidelines have been advisory rather than mandatory.  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).  In keeping with the Supreme Court's pronouncement in *United States v. Booker*, 543 U.S. 220 (2005), the Second Circuit has directed district courts to follow a three-step process in determining an appropriate sentence under this advisory scheme.  *United States v. Arias*, 249 F. App'x 265, 266 (2d Cir. 2007).  First, the "'district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'"  *United States v. Smith*, 697 F. App'x 31, 31 (2d Cir. 2017) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007))*.*  Second, the district court must "consider whether a departure from the Guidelines range is appropriate." *Arias*, 249 F. App'x at 266; *see also Arakelian v. United States*, No. 08-3224, 2009 U.S. Dist. LEXIS 6509, at *24 (S.D.N.Y. Jan. 28, 2009) ("Second, the district court must consider whether a departure from that Guidelines range is appropriate."). Third, the district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *United States v. Norman*, 776 F.3d 67, 76 (2d Cir. 2015).

The § 3553(a) factors are as follows:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

13

(2)    the need for the sentence imposed —

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for —

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5)    any pertinent policy statement . . . issued by the Sentencing Commission . . . [that] is in effect on the date the defendant is sentenced;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Second Circuit has instructed that "in formulating a reasonable sentence a sentencing judge must consider 'the history and characteristics of the defendant' within the meaning of 18 U.S.C. § 3553(a)(1). . . and should take under advisement any related arguments, including the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1." *United States v.*

14

*Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006), *overruled on other grounds by Rita v. United States*, 551 U.S. 338 (2007); *see also United States v. Olaiya*, 446 F. App'x 388, 390 (2d Cir. 2011) ("Under section 3553(a)(1), district courts should consider 'the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1.'") (quoting *Fernandez*, 443 F.2d at 33).

In applying the § 3553(a) factors, the district court must conduct "its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *Cavera*, 550 F.3d at 189. Further, the Second Circuit requires more than "robotic incantations" or a general reference to the Guidelines. *See United States v. Crosby*, 397 F.3d 103, 111, 113 (2d Cir. 2005). After an "independent review of the sentencing factors," district judges are "free to impose sentences outside the recommended range." *Cavera*, 550 F.3d at 189.

In *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), the Supreme Court explained that § 3553(a) contains "an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," which are set forth in § 3553(a)(2). *Id.* (quoting 18 U.S.C. § 3553(a)). As the Supreme Court elaborated in *Gall v. United States*, 552 U.S. 38 (2007), the Sentencing Guidelines are "the starting point and the initial benchmark." *Id.* at 49. However, the Second Circuit does "not presume that a Guideline-range

15

sentence is reasonable" and does not require "extraordinary circumstances to justify a deviation from the Guidelines range." *Cavera*, 550 F.3d at 190. Thus, this Court is free to reach an "informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." *Id.* at 189 (citing 18 U.S.C. § 3553(a).)

Here, as set forth in the addendum to the PSR (the "Addendum"), Probation calculates a total offense level of 18 for the wire fraud count to which Miele pleaded guilty. (Addendum, ¶¶ 17-28.) That offense level results in a Guidelines range of 27 to 33 months because Miele has no prior criminal history and thus has a Criminal History Category of I. (*Id.*, ¶ 30.) Although Probation recommends a sentence of 27 months of imprisonment (Rev. Recommendation at 1), consideration of the § 3553(a) factors—including Miele's history and characteristics and the fact that he has provided full and meaningful cooperation to the Government and has already made full restitution to his victims—demonstrates that the Court should impose a non-custodial sentence with conditions including home confinement, community service and therapy.

## II. CONSIDERATION OF THE § 3553(A) FACTORS WARRANTS IMPOSITION OF A NON-CUSTODIAL SENTENCE.

For the reasons set forth below, and mindful of 18 U.S.C. § 3553(a)—which provides that "'[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes' of sentencing" as identified in that section—

Miele respectfully submits that the Court should sentence him to a noncustodial term of either probation or house arrest.

### A. The Nature of the Offense.

Miele pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. He acknowledges the seriousness of this offense and expresses sincere remorse for his conduct. But he is not the typical defendant in a wire-fraud prosecution.

Miele is a young man who wanted badly to succeed in politics so that he could make a positive impact on others. In his early twenties, shortly after graduating college, Miele secured a job that he believed would grant him entry to the world of politics: deputy campaign manager for George Santos, then a promising candidate running for a seat in the United States House of Representatives. In that role (and later through his limited-liability company, One57 Group), Miele was tasked with securing campaign contributions from donors. He believed that his success in that job and his resulting prospects for advancement in politics were largely dependent on how much money he was able to raise for Santos. Unfortunately, overwhelmed by the intense desire to succeed and make a name for himself, Miele violated the values instilled in him by his parents by engaging in the criminal conduct that brings him before this Court for sentencing.

17

Miele knows what he did was wrong and fully accepts the consequences of his actions. But his young age, the anomalous nature of his crime, his prompt acceptance of responsibility for his crimes, and his full cooperation with the Government suggest that a sentence of incarceration would be greater than necessary to accomplish the legitimate goals of sentencing.

## B. Miele's Characteristics Warrant A Non-Custodial Sentence.

As the Court is well aware, consideration of a defendant's background, character and conduct can support a sentence well below the applicable advisory Guidelines Range, including a term of probation. *See, e.g.*, *United States v. Bouloute*, 185 F. App'x 102, 106 (2d Cir. 2006) (finding the district court properly selected a lesser sentence because, after considering all relevant factors, it determined that the lesser sentence was sufficient but not greater than necessary to do justice); *United States v. Johnson*, 2017 U.S. Dist. LEXIS 68989, at *11, *15 (E.D.N.Y. Apr. 27, 2017) (imposing a "sentence of no incarceration" where the Guidelines range was 24 to 30 months in light of the § 3553(a) factors); *United States v. Thurston*, 544 F.3d 22, 25-26 (1st Cir. 2008) (affirming a sentence of 3 months, when the guideline sentence was 5 years, where the court found that the defendant had accepted responsibility for his crime and the court took into consideration his "charitable work, community service, generosity with time, and spiritual support and assistance to others"). Here, we respectfully submit that Miele's character and

history warrant a noncustodial sentence with home confinement, a substantial amount of community service and mandatory therapy.

### 1. Miele's Acts Of Generosity And Empathy Represent His True Character.

The first of characteristics that warrants a sentence of probation is Miele's history of generosity to and compassion for others. The letters of support submitted with this Sentencing Memorandum describe the myriad ways in which he has gone out of his way to help or provide support to those in need. In that regard, Miele's longtime friend Joanne Preece states that "Sam has always been one of [her] most generous friends—especially with the time he will give a friend or the listening ear and helpful advice he provides." (Ex. 24, Joanne Preece letter.)

Miele's willingness to sacrifice himself is most evident in his service to his family and friends. Miele's father, Paul, explains that he raised his children "to love each other," "work hard," "be respectful of others" and "always do the right thing." (Ex. 16, Paul Miele letter.) Because of that upbringing, Miele has often tried throughout his adolescent and adult life to help and support members of his family. As his aunt Angela Stamnes attests, "Sam comes from a close-knit family with core values that represent kindness, respect, hard work and perseverance" and he "has strong relationships with his parents and siblings, as well as his extended family." (Ex. 25, Angela Stamnes letter.) Miele's cousin, Cassandra Mazzucco agrees that Miele's family is "very close knit" and that he was "always the go-to and very

generous." (Ex. 10, Cassandra Mazzucco letter.) Carlie Mazzucco, a cousin who describes Miele as "the brother [she] never had," states that he "was always a very giving individual, especially towards [her]." (Ex. 9, Carlie Mazzucco letter.) Joseph Miele, another cousin, attests: "[Miele] has always shown me his full support and friendship throughout many stages of my life, and I have watched him demonstrate the same care, concern, and loyalty to his family members who have similarly relied on him in various ways." (Ex. 14, Joseph Miele letter.) Miele's aunt, Debbie Mazzucco, similarly states that Miele's "humor, wit and kindness always stand out when I think of Sam and the memories we have together." (Ex. 11, Debbie Mazzucco letter.)

As one particularly poignant example, Miele's mother relays that when his grandparents "were going through the final months of their lives," Miele visited them "three to four times weekly" out of respect for his grandfather and his desire to be there when his relatives truly needed him. (Ex. 15, Lisa Miele letter.) Thomas Coyne, one of Miele's friends, recounts a similar experience, stating that when his father passed away unexpectedly this past summer, Miele "showed up emotionally and physically every day." (Ex. 3, Thomas Coyne letter.) Coyne explains that Miele "has gone above and beyond for [Coyne's] mother and [his] two triplet siblings every step of the way" and "has spent countless hours" talking to Coyne, his brother, his sister and his mother. (*Id.*) Coyne describes Miele as "a blessing" and "the glue

20

that sticks [their] friend group together." (*Id.*)  College friend Keiran Firth echoes this sentiment, stating that Miele "has consistently proven himself to be a thoughtful, reliable, and caring individual" and is "someone who consistently embodies integrity and compassion." (Ex. 5, Kieran Firth letter.)  Firth continues that Miele "has always been there for [him] and others, whether in small acts of kindness or larger community efforts." (*Id.*)

Over the years, Miele has repeatedly helped his friends. One friend recounts that when he moved to New York City from Nashville, Miele—who he had just met—introduced him "to so many great people" and built a friendship with him that is one of the reasons he remained in the City.  (Ex. 20, Devon O'Donnell letter.) Similarly, during his time at St. John's, Miele would often go out of his way to drive his roommate Kieran Firth to the train station so that he would not have to wait for the bus.  (Ex. 5, Kieran Firth letter.)  These gestures represent a core tenet of Miele's character and, as Firth notes, "speak volumes about Sam's thoughtfulness and willingness to put others' needs ahead of his own." (*Id.*)

Notably, Miele gave freely not only of his time but also of his money.  As Nathan Glanton notes, when some of his fraternity brothers could not pay their dues, Miele routinely "decided to help out of his own pocket" and would cover the "outstanding balance for [his] brothers who were going through a hard time and doing everything right." (Ex. 6 Nathan Glanton letter.)  As Glanton attests, Sam's

actions demonstrate that he is focused "on the greater good" and "respected everyone's financial situation." (*Id.*) While in college, Miele also conducted career workshops with other fraternity brothers to help underclassmen create their first resume or prepare for their first job interview. (*Id.*) Glanton states that "Sam consistently set a positive example, guiding younger members of the fraternity to become the best versions of themselves." (*Id.*)

Miele has also engaged in acts of kindness and generosity to help others. For example, Gary Bronson, a retired professor who had just become acquainted with Miele, states that upon learning that Bronson's wife suffers numerous health issues and has difficulty walking, Miele began bringing the newspaper from the Bronsons' driveway to a chair at their front door every morning so Ms. Bronson did not have to walk to the street and bend over. (Ex. 1, Gary Bronson letter.) It is because of such quietly selfless and considerate actions that Bronson, who has taught more than 8,000 college students in his decades as an educator, characterizes Miele as "exceptionally intelligent, sincere, and reliable." (*Id.*) Similarly, while in college, Miele devoted significant time and sacrificed his social life to organize charity golf events for the Wounded Warriors Project. (Ex. 2, Owen Clifford letter; Ex. 5, Kieran Firth letter). Further, Rena and Michael Leo, who have known Miele his entire life, highlight not just his "dedication and work ethic," but also his "kindness," "positive attitude" and "commitment to giving back," including by mentoring

younger players on the high school golf team and helping Michael to run a local charity golf outing. (Ex. 7 Rena & Michael Leo letter; *see also* Ex. 8, Leonard Lepore letter (describing Miele as "a very positive individual" who "is committed to reforming and being a positive influence to others").)

> ### 2. *Miele Acceptance Of Responsibility And The Assistance He Gave The Government Demonstrate That His Offense Conduct Was An Anomaly For Which He Feels Deep Remorse.*

Beyond the character that Miele has shown through acts of generosity and kindness, another facet of his character that warrants a noncustodial sentence is the fact that he has taken responsibility for his actions, made full restitution to his victims, and substantially assisted the Government in its investigation and prosecution of George Santos. These actions reflect that Miele's offense represents an anomaly in his character and that he is committed to making amends for his misconduct and living the rest of his life as a law-abiding citizen.

As noted above, the Second Circuit held in *Fernandez* that when considering a defendant's history and characteristics under 18 U.S.C. § 3553(a)(1), a district court "should take under advisement . . . that [the] defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1." *Fernandez*, 443 F.3d at 33; *see also Olaiya*, 446 F. App'x at 390 (same). We understand that the Government is submitting a *Fernandez* letter to the Court to describe Miele's substantial efforts to

23

cooperate by meeting with agents and prosecutors to answer their questions and providing them with documents that would not otherwise have been available to them.

In addition to his cooperation with the Government, Miele has fully satisfied his forfeiture and restitution obligations.  Specifically, he agreed to a forfeiture obligation of $69,139.00, (PSR, ¶ 70), and paid that amount in full on October 2, 2024, (ECF No. 32, Receipt for Forfeiture Payment).  Miele also stipulated to restitution in the amount of $109,171.00, which he has paid in full.  (PSR, ¶ 69.) Miele has already paid well in excess of that restitution amount, paying $470,000 to John Doe #1 in accordance with his Plea Agreement.

As the letters of support attached to this Sentencing Memorandum demonstrate, it is entirely in keeping with Miele's character for him to have gone to such lengths to make amends for his criminal conduct.  College friend Owen Clifford attests that he is "not surprised that Sam has admitted guilt for his wrongdoings as it is on par with the integrity he has exemplified to me over the years." (Ex. 2, Owen Clifford letter.)  Clifford elaborates on this, stating that Miele "is the type of individual that admits when wrong, learns from it, and moves forward." (*Id.*) Another friend, Nathan Glanton, notes that he has "heard [Miele's] remorse" and "know[s] [Miele] has many regrets about his actions and that he will never put himself in this position again." (Ex. 6, Nathan Glanton letter.)  A third friend, Joseph

24

Pennella, attests: "Samuel has expressed deep remorse for his actions and is committed to making amends and addressing any issues that led to this situation." (Ex. 21, Joseph Pennella letter.)

Miele's family members have witnessed the same acceptance and believe it is a return to Miele's true character. (*See* Ex. 10, Cassandra Mazzucco letter ("To go through something like that with the maturity to own his wrongdoings and a future that requires deep physical and emotional rebuilding is enough reparation."); Ex. 12, Amanda Miele letter ("Being around him the past few months, it has become more and more evident that Sam has realized the weight of his actions and the repercussions it will have moving forward in his career and life overall."); Ex. 16, Paul Miele letter ("I am very proud of the way that he has carried himself since his arrest"); Ex. 4, Caroline Faris letter ("He's shown a lot of maturity in owning his wrong doings and knowing he deserves some type of repercussions.").) In short, the letters of support submitted to the Court illustrate an acceptance of responsibility worthy of consideration.

For the foregoing reasons Samuel Miele's history and characteristics warrant a noncustodial sentence.

### C. A Non-Custodial Sentence Is Sufficient But Not Greater Than Necessary To Promote The Purposes Of 18 U.S.C. § 3553(a)(2).

18 U.S.C. § 3553(a)(2) instructs the Court to consider the purposes intended to be served by criminal sentences. Those purposes are "(A) to reflect the

25

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).  The sentencing court's overriding mandate is to impose a sentence that is sufficient, but not greater than necessary, to comply with these purposes.

Particularly relevant to this § 3553(a) factor is *Gall*'s discussion of probationary sentences, in which the Court emphasized "the 'substantial restriction of freedom' involved in a term of supervised release or probation."  552 U.S. at 48. The Court explained that individuals on probation "are subject to several standard conditions that substantially restrict their liberty."  *Id.*  The Court elaborated on those restrictions as follows:

> Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking…. Most probationers are also subject to individual "special conditions" imposed by the court.

*Id.*  The Supreme Court thus made clear that sentencing courts should not view a non-custodial sentence as a free pass for a defendant, but rather as real punishment with concrete, extremely detrimental restrictions.  With that admonition in mind—

26

and given Miele's many acts of kindness and generosity, the substantial cooperation he has provided the Government, and the forfeiture and restitution amounts he has already paid—a noncustodial sentence would serve the purposes set forth in the § 3553(a)(2), including reflecting the seriousness of Miele's offense, providing just punishment for that offense, and promoting respect for the law.

Moreover, a term of imprisonment is not necessary to protect the public against further crimes by Miele or to deter him from engaging in future criminal conduct because—in addition to the forfeiture and restitution he has paid—Miele has already suffered enormous negative consequences from his criminal conduct. Perhaps most devastating among those consequences is that his criminal prosecution, which has been the subject of uniquely intense media coverage due to its connection to George Santos, has caused Miele's family intense shame and embarrassment, destroyed his reputation and ruined any chance he has to pursue a career in politics—or, for that matter, any other professional endeavor. As explained by Cassandra Mazzucco, Miele's cousin, "[h]e has faced heavy media scrutiny, a punishment he knows he deserves, and has been stripped of all he created for himself." (Ex. 10, Cassandara Mazzucco letter.) Miele recognizes that he has only himself to blame for what has happened to him, but those consequences are nonetheless a harsh punishment and a strong incentive to never again stray from the straight and narrow path. As Miele's father explains: "I told him he will learn from

27

his failures as much as from [his] successes," (Ex. 16, Paul Miele letter); he has certainly learned from the personal failures that bring him before this Court.

Djoman Ncho predicts that Miele will never forgive himself for the suffering he has caused his family. (Ex. 19, Djoman Ncho letter.) Ncho describes the extreme humiliation that Miele has suffered from the media coverage of his case and how, when Ncho looks into Miele's eyes, he sees a "part of him that is just dead." (*Id.*) Similarly, Louis Napolitano, a family friend, states that Miele is "already suffering a great deal by tarnishing his career and reputation as a trustworthy person." (Ex. 18, Louis Napolitano letter.) Robert Pilat relays that Miele has "suffered the loss of reputation and standing at the beginning of what could have been a promising career." (Ex. 23, Robert Pilat letter.) As Miele's sister Amanda states, he is suffering disappointment and embarrassment from his conduct and understands "the repercussions it will have moving forward in his career and life overall." (Ex. 12, Amanda Miele letter.)

Further, a term of imprisonment is not necessary to deter others from engaging in similar criminal conduct. Given the harsh consequences that Miele has already experienced very publicly, any person seeing the shame, pain and suffering caused by his wire fraud violation would be sufficiently deterred from engaging in a similar offense without seeing him serve a custodial sentence. *See United States v. Singh*, No. 13-cr-408, 2014 U.S. Dist. LEXIS 100613, at *1-5 (E.D.N.Y. July 23, 2014)

(stating that general deterrence was satisfied by a sentence of probation and that specific deterrence was achieved because it was "unlikely that [the defendant] will engage in further criminal activity in light of his embarrassment to the community" and the conviction's impact on his employability).

In sum, for the reasons set forth above, a noncustodial sentence is sufficient, but greater than necessary, to serve the sentencing purposes set forth 18 U.S.C. § 3553(a)(2).

### D. A Non-Custodial Sentence Is Consistent With The Need To Avoid Unwarranted Sentencing Disparities.

18 U.S.C. § 3553(a)(6) directs the court to consider the need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Imposing a non-custodial sentence on Miele would not create such a disparity. Statistics compiled by the United States Sentencing Commission (the "U.S.S.C.") demonstrate that 20.7% of individuals sentenced in the Second Circuit in 2023 for crimes involving fraud, theft or embezzlement—irrespective of loss amount—received either a fine, probation only, or probation and some non-prison alternative. (U.S.S.C. Statistical Information Packet (Fiscal Year 2023, Second Circuit), Table 5.) Further, between 2015 and 2023, 21.6% of individuals sentenced in the Second Circuit for crimes involving fraud, theft or embezzlement received a noncustodial sentence of probation only, probation and alternatives, or a fine only. These statistics demonstrate that it would

not create an unwarranted sentencing disparity to sentence Miele to a noncustodial sentence, particularly in light of his unique characteristics described above.

### E. That Restitution And Forfeiture Has Been Fully Paid In This Case Supports Imposition Of A Sentence Of Probation.

The final § 3553(a) factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). The Mandatory Victim Restitution Act of 1996 (the "MVRA") applies to this offense. (PSR, ¶ 13.) The MVRA requires that the defendant make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1). As Probation notes in the PSR, a defendant who pleads guilty is normally only obligated to pay restitution equal to "the loss amount stemming from the count of conviction." (PSR, ¶ 13.)[4] However, the defendant may, in his or her plea agreement, accept a greater restitution obligation. 18 U.S.C. § 3663A(a)(3). That is the case here, as Miele agreed to repay well in excess of the stipulated loss amount of $109,171. (PSR, ¶ 13.) Specifically, he agreed to repay—and has already repaid—$470,000 to one of his victims. (Ex. __, Plea Agreement, ¶ 3.) He has also already satisfied his forfeiture obligation of $69,139.00. (PSR, ¶ 70; ECF No. 32.)

The goal of restitution is to make victims whole and return them to their original state. *See United States v. Maynard*, 743 F.3d 374, 377-78 (2d Cir. 2014). The Department of Justice ("DOJ") candidly recognizes that, despite this goal,

---

[4] *See also* 18 U.S.C. § 3663A(a)(1); 18 U.S.C. § 3664(f)(1)(A).

"realistically . . . the chance of full recovery is very low." *Restitution Process*, CRIMINAL DIVISION U.S. DOJ (October 10, 2024, 6:24 PM) https://www.justice.gov/criminal/criminal-vns/restitution-process. That is not the case here, as Miele has already satisfied his restitution and forfeiture obligations in full.

The full payment of restitution and forfeiture prior to sentencing indicates Miele's sincere remorse for his conduct and an acceptance of responsibility that warrants a noncustodial sentence. *See United States v. Broderson*, 67 F.3d 452, 458-59 (2d Cir. 1995) (reasoning that when the fraud victim suffers no loss, the district court judge has special competence to determine if a downward departure is warranted.); *see also United States v. Crook*, 9 F.3d 1422, 1426 (9th Cir. 1993) (explaining extraordinary restitution can be a basis for downward departure when it demonstrates an acceptance of responsibility.); *see also United States v. Kim*, 364 F.3d 1235, 1238 (11th Cir. 2004) ("[T]he *methods* by which a defendant makes restitution may qualify as an exceptional circumstance, above and beyond what is considered in the Guidelines.")

## <u>CONCLUSION</u>

For the reasons set forth above, Miele respectfully submits that a noncustodial sentence of probation or house arrest is both warranted and appropriate in this case.

Dated:  February 28, 2025                 Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.
*Attorneys for Defendant Samuel Miele*

By: _____

KEVIN H. MARINO

# EXHIBIT 1

25 Cadence Ct.
Morristown NJ. 07960
Sept. 28,, 2024 U/S. D.

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030\Central Islip, New York

Dear Judge Seybert:

I have known Sam Miele a Little over a year since my wife and I moved into Morristown. Having just retired from a lifetime of teaching at Fairleigh Dickinson I almost automatically start talking to anyone that I meet and met Sam while walking my dog,

Having taught and spoken to over 8,000 undergraduate and/or graduate students over fifty year of teaching at the university, a number of students would always stand out as exceptionally intelligent, sincere, and reliable during the first days of classes. Sam made this same impression. Later actions confirmed it.

When Sam learned that my wife, a retired nurse with a number of health issues, found it difficult to walk and do other tasks, he would take the morning paper from the driveway and put it on a chair at the front door. Thus, Rochelle an early riser, did not have to either wail for me or walk and bend to retrieve the paper. He would also return the garbage pails from the street to our garage after they were picked up.

These small, but important considerations, along with my talks with him, convince me that Sam is a truly talented young man who can do a great deal of good in this world. I have seen a number of people with similar mistakes as Sam go on to lead meaningful and productive lives for others and themselves. I truly think Sam can and will do the same. As such, I would urge a maximum degree of leniency to provide Sam a reasonable path for growth and development.

Respectfully,

Gary Bronson, Ph.D.
Professor of Information System (Ret.)
Fairleigh Dickinson Univ., Madison, NJ

# EXHIBIT 2

## Sentencing Letter on Behalf of Samuel Miele

**Owen Clifford II**                                                                    **September 10, 2024**
**15 Gail Court**
**Carmel, NY 10512**

**Honorable Joanna Seybert, U.S.D.J.**
**Alfonse M. D'Amato Federal Building**
**United States District Court**
**100 Federal Plaza, Courtroom 1030**
**Central Islip, New York 11722**

Dear Judge Seybert,

My name is Owen Clifford and i am writing to you on behalf of my dear friend, Samuel Miele. I have known Sam for the past 9 years, with our friendship beginning in May, 2015 on the campus of St. John's University in Queens, New York where Sam and I would both go on to graduate from in 2018. Sam and I were housemates from 2015-2018. He has become my closest friend in a very small kept "circle" following our time in college. This friendship stems from the integrity, generosity and drive to succeed that Sam has exemplified to myself and the rest of our circle.

During the past 9 years, Sam and I have both transitioned together from ambitious college freshman, to members of the American Workforce. We both leaned on the experience of our employers during this transition as we did with the professors of St John's. My transition included excellent leadership and I am fortunate enough to now lead and train new members of the workforce. Sam's transition, on the other hand, resulted in him pleading guilty to Wire Fraud. Specifically,"Soliciting financial contributions for George Santos's campaign by impersonating a high-ranking aide to the Speaker of the House and charging individuals' credit cards without authorization."

Sam is my only friend to go into politics. He is also my only friend to ever plead guilty to anything more than a speeding ticket. I often wonder how the New York Political System, as a whole, failed to properly transition Sam into the American Workforce. Would I, or anyone in our "Circle" have done the same things Sam has if we were met with the same leadership as Sam? Maybe. Would everyone in our circle admit guilt despite having terrible leadership? I do not think so. But I am not surprised that Sam has admitted guilt for his wrongdoings as it is on par with the integrity he has exemplified to me over the years. Sam is not the type of individual to look for an excuse for his actions. He is the type of individual that admits when wrong, learns from it, and moves forward, better for having the experience.

Sam's integrity is only matched by his generosity and work ethic. In college, Sam organized charity events that raised money for the Wounded Warriors Project. One event that stands out in my memory was a golf outing that Sam took charge in organizing. The level of care and detail he put into this event truly blew me away. While my friends and I were nursing hangovers, Sam was up and out the door at 7:00 am to go to the golf course and speak with vendors. As a young man, I thought it was silly of him to miss the party the night prior. As an adult, I am envious of the work ethic he has had since I met him. A work ethic that I still think of and use to motivate myself to be better.

As Sam's best friend, I know how sorry he is for his actions. I know he understands the severity of the crime he committed both by the words he has said to me and by the sorrowful demeanor he willfully carries himself with. I ask you to please show Sam better leadership than he has encountered thus far in his professional life. Please help him navigate this mistake by showing leniency in his sentencing. Allow him to become the productive member of the American Workforce he was meant to be. Sam, his family, his friends and his community will all be better for it.

Thank you for letting me share some insights on my best friend. Although I am saddened by his actions, I know he will only allow himself to become better for it, regardless. That's just who Sam is.

Respectfully,

Owen Clifford II

# EXHIBIT 3

Honorable Joanna Seybert, U.S.D.J.

Alfonse M. D'Amato Federal Building

United States District Court 100 Federal Plaza, Courtroom 1030

Central Islip, New York 11722

**Dear Judge Sybert,**

Earlier in the summer, I had a significant life-changing event happen to my family. My father

passed away unexpectedly. Certain people showed up emotionally and physically every day,

and that man is Sam Miele. I understand his case's severity and how it affected everyone

around him. Sam has gone above and beyond for my mother and my two triplet siblings every

step of the way. He attended the funeral, repass, and every gathering with friends and family.

He has spent countless hours talking to me, my brother, my sister, and my mother. We didn't

have to ask Sam to bring anything or be present with us since mid-June…he just did it.

Since meeting Sam through our mutual friends, we have been inseparable. It's indeed been a

blessing. He has always been the glue that sticks our friend group together. He has been

extremely brave throughout the process, and I'm proud to call him a friend and brother.

Respectfully yours,

Thomas Coyne IV

# EXHIBIT 4

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

Thank you for taking the time to read my letter about my younger cousin, Sam- we still call him Sammy. My name is Caroline and I am the oldest of the cousins and I have known Sam his whole life. We grew up together.

I understand he has committed wire fraud by soliciting financial contributions for George Santos's campaign by impersonating a high-ranking aide to the Speaker of the House and charging individuals. I am devastated to hear about the crimes he committed, all of which are immoral and not a good representation of who we are as a family.

I've always adored Sammy as my youngest cousin at the time, being that he was 6 years younger. He's funny, witty, has a sarcastic sense of humor. The side that most people don't see is how he instantly turns into a softie with little animals; in fact, his nickname was Puppy as a kid. My aunt bought him a cat if he stopped biting his nails. I have the best childhood memories with Sam and he always made us laugh, especially when we would make homemade videos.

Out of his siblings, Sammy always beat to his own drum and I witnessed first hand how his different thought process wasn't always supported at home. His older sister was a star athlete. His older brother was following in my uncle's footsteps with the business. Sammy liked to golf, be up to date with politics and current events, and did not have any plans on taking over the family business.

From a young age, Sam was always trying to figure out a way to make his own money, to buy his own things, and start some sort of his own business. His dream was to become an entrepreneur. When the new iPhones came out, he figured out how to make enough money to buy it for himself as a young kid. This is just some insight to shed light to his drive for success and how it was easy for him to get wrapped up in making money, even though it was most definitely not the right way.

It was clear he was always into politics and very knowledgeable. Sammy is a very smart person who made a very dumb decision. What he did, at the level in which he did it, is not acceptable. Knowing him, he got a taste of getting "rich quick" and got way too caught up. I have spent some time with him in the last few months and he is humbled, embarrassed, and has owned up to everything he has done. He's shown a lot of maturity in owning his wrong doings and knowing he deserves some type of repercussions.

Please note that Sammy is very loved and comes from a hard-working
family that wishes he learns from this and moves on. My hopes for Sammy is that he never loses his passion for success and can someday have the opportunity to start a legitimate business.

Respectfully,
Caroline Faris

# EXHIBIT 5

Kieran Firth

400 East 20th Street

New York, NY 10009

Kpfirth94@gmail.com

917-748-5938

10/1/2024

The Honorable Joanna Seybert, U.S.D.J

Alfonse M. D'Amato Federal Building

United States District Court

100 Federal Plaza, Courtroom 1030

Central Islip, New York 11722

Dear Judge Seybert,

I am writing to provide a character reference for my close friend, Sam Miele, whom I have known for nearly 10 years. During this time, Sam has consistently proven himself to be a thoughtful, reliable, and caring individual.

Sam and I were roommates for two years during college, and during that time, he would often go out of his way to drive me to the train station so I wouldn't have to wait for the bus. This may seem like a small gesture, but it speaks volumes about Sam's thoughtfulness and willingness to put others' needs ahead of his own. These acts of kindness were a constant reminder of the type of person Sam is always looking for ways to help those around him.

In addition to his generosity, Sam was heavily involved in our fraternity's charitable efforts. He helped organize and run a charity golf tournament, which raised funds for The Wounded Warriors Foundation.

Throughout the years, I have come to rely on Sam not only as a friend but as someone who consistently embodies integrity and compassion. He has always been there for me and others, whether in small acts of kindness or larger community efforts.

I understand the seriousness of the situation Sam is in, but I also know that he is someone who has taken accountability for his actions and has shown deep remorse. Sam is a person of strong character, and I believe he has the potential to learn from this experience and continue to contribute positively to the lives of those around him.

Thank you for your time and consideration of this letter. I am confident that Sam's actions moving forward will reflect the thoughtful and dependable person he has always been.

Sincerely,

Kieran Firth

# EXHIBIT 6

Nathan Glanton
168 Connetquot Rd
Oakdale, New York 11769
nathanglanton@gmail.com
518-694-6812
9/30/2024

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Re: Character Reference for Samuel Miele

Dear Judge Seybert,

I am writing to offer my character reference for Samuel Miele, whom I have known since 2015 when we met at St. John's University. Over the years, Sam has become a close friend, and I have come to admire him deeply for his consistent kindness, respectfulness, and integrity.

I met Sam on the quad; he was chipping a golf ball with my roommate at the time. When I went up to the two of them, Sam immediately greeted me, introducing himself, shaking my hand.  It felt formal, which was a rarity in college.  He then invited me to play with them.  We played the little golf game for about 30 minutes and got to know each other the entire time.  Sam was welcoming and kind and we became friends. From the start, I could tell Sam was a serious person with large ambitions. He was studying political science to make a positive impact on the world, and realized as a teenager he needed to be professional at all times in order to realize his dreams.

Later in college, Sam and I were both members of the same fraternity at St. John's, where he served as president. In that leadership role, Sam consistently set a positive example, guiding younger members of the fraternity to become the best versions of themselves.  Sam and I ran resume workshops where we helped young men make their first resume.  Sam also was a great mock interviewer.  He would pretend he was the hiring manager for an internship and help prepare members for their first interviews. Sam was able to show everyone how to be respectful and professional.  He approached this responsibility with dedication and sincerity, helping others grow and mature.

Sam also had many generous acts in college.  While Sam was president, I served the chapter as treasurer.  Throughout the year, many people had problems paying dues.  As broke college kids many chapter members were always one surprise bill away from not being able to make rent.  When members were behind on dues Sam and I would meet with them to determine if they are not paying because they cannot or if they are not paying because they do not want to.  Several times during these meetings, Sam heard the situation of the member and decided to help out of his own pocket.  Sam would cover the outstanding balance for our brothers who were going through a hard time and doing everything right.  Sam never sought recognition for this or let the chapter know that he was covering the bill for the student.  He would just pay it and ask that the person show up to an extra community service event instead of paying him

back.  Sam focused on the greater good of the chapter and respected everyone's financial situation.

Since our college days, Sam and I have remained close friends. We often spend time golfing together, and one thing that has always stood out to me is Sam's unwavering honesty on the golf course. Golf is a sport where cutting corners is unfortunately common.  It is easy to announce a lower score, or kick your ball out from behind the tree, but Sam has never once compromised his integrity. His commitment to fairness, even in casual games, speaks volumes about his character.  We also have gone on several golf trips in our years since graduation. Sam is always the man with the plan. Once a destination is decided, he looks for Airbnb's, books the courses and plans the flights.  He has a comprehensive approach that leaves no stone unturned.  He spends his own time researching for the good of the group and never asks for any acknowledgement or special privileges because of it.  Sam gives it his all because he cares about his friends having a good time.

Sam's kindness, honesty, and sense of responsibility have been constant throughout the years I have known him, and I believe these traits are an integral part of who he is. In our conversations since he has pled guilty, I have heard his remorse.  I know he has many regrets about his actions and that he will never put himself in this position again.  I respectfully ask that you consider this when reviewing his case, as I firmly believe Sam is someone who strives to do right by others.

Thank you for your time and consideration.

Sincerely,

Nathan Glanton

# EXHIBIT 7

Rena and Michael Leo
79 E Main Street
Mendham, NJ 07945

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

October 4, 2024

Dear Judge Seybert,

We are writing to provide a character reference for Sam Miele. We have known Sam his entire life as his family, and specifically, Rena, in her role as a secretary at Chatham High School, witnessed firsthand Sam's character and achievements throughout his time there. We are aware of Sam's crimes related to wire fraud and soliciting donations on behalf of a political campaign under false pretenses, and we just hope to provide some perspective on Sam's character prior to his sentencing.

During his high school years, Sam consistently impressed both teachers and administrators with his dedication and work ethic. He was never one to seek the spotlight, but his contributions were always recognized. Rena recalls many instances of teachers praising Sam for his kindness and intelligence. His respectful demeanor and positive attitude earned him admiration, and he navigated his academic pursuits without ever getting into trouble.

Sam excelled academically. He took on challenging courses and consistently achieved strong grades, making him a role model for others. His ability to balance academic success with an interest in helping others set him apart. Whether it was mentoring new golfers as a Varsity golf team member, helping Michael to run a charity golf event, or participating in local initiatives through the Key Club at his school, Sam has shown a commitment to giving back. His leadership and ability to connect with people of all ages have made him a valuable asset to every organization he has been a part of.

Respectfully,

Rena Leo

Michael Leo

# EXHIBIT 8

Leonard A. Lepore
48 Woodmont Drive
Chatham, New Jersey 07928
973-377-5147
lennylep@msn.com

October 1, 2024

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, NY 11722

      Re:  Sam Miele

Dear Judge Seybert:

      I am aware that Sam Miele has pleaded guilty to committing wire fraud, and I am writing this letter on his behalf.

      I have known the Miele family for over fifty years, often attending family gatherings.  I considered his deceased grandfather, Bob Miele, a very dear friend, and Sam's father, Paul Miele, is one of my closest friends.  I have known Sam since he was a young man.

      Even though I am sixty years older than Sam, he has been most welcoming to me, and we have shared many conversations.  I have found Sam to be a very positive individual, never speaking poorly of anyone.

      I believe Sam has taken responsibility for his actions and moving forward, I believe Sam is committed to reforming and being a positive influence to others.

          Respectfully yours,

          Leonard Lepore

# EXHIBIT 9

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I am the first cousin of Sam Miele, whom ive known my entire life. Out of all the cousins (there was 6 of us total) Sam and I were the closest. In short, Sam was the brother I never had. I plead that you show mercy on him, as I know Sam's true character, which shows he is honorable and most of all generous.

From early on, Sam was always the generous one out of all of us. I'll never forget when Apple products just started to become "big" to our generation, Sam always offered to help pay for the new iPhone for me so we can experience the excitement together. Mind you, we were very young with little allowance. This was something he continued to offer me throughout our childhood, to which I never accepted but was always grateful. He was always a very giving individual, especially towards me.
As for the honorable part, I know I speak of times in the past, but I truly believe one's character is developed at a young age. Sam, even though the youngest, was a protective cousin and would always defend me in meaningless cousin arguments. Again, he was the brother I never had growing up. He never made me feel less than whenever we would try things he was clearly better at. My childhood is defined by the moments I spent with my cousins, especially Sam.

Although once we reached our college years and drifted apart, Sam always showed me these character traits when I saw him during holidays and family gatherings. His true character always remained intact and continues to stand the test of time. I understand he is guilty of what he has committed, but I know in my heart Sam has humbly taken the responsibility for his actions. I am proud of him for taking accountability and owning up to his actions. I know in his heart he carries regret over this. I ask again that you seek minimal punishment for Sam, as his positive attributes truly define his true character. He is loved deeply amongst our family for who he is as a person and we wish for you to seek mercy on his behalf.

Respectfully yours,

Carlie Mazzucco

# EXHIBIT 10

September 11th, 2024

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Joanna Seybert:

To start off, I am fully aware that my cousin, Samuel Miele, committed and pleaded guilty to wire fraud and solicited financial contributions for George Santos's campaign by impersonating a high-ranking aide to the Speaker of the House and charging individuals 'credit cards without authorization, all of which are immoral and in no way a representation of who we are as a family. I have known him all his life and we grew up together.

We grew up very close knit.  He is the youngest cousin and has always beaten to his own drum. His dry sense of humor, wittiness, and sarcasm remained consistent his whole life. Sam always liked the finer things in life and when the iPhone came out, he made sure to make enough money to buy it along with the newest versions to follow. Mind you, he was around 12 years old. He'd offer to get it for us, despite just being a teenager. His entrepreneurial spirit was very vibrant at a young age, but he also had a soft side to him, a sensitive side that loves animals. I mean, his mother calls him "puppy."

Ever since he was little, our family has always said Sam would be President one day. Anything you needed help with money-related, he was always the go-to and very generous when it came to sharing what he knows. He gravitated towards politics at a young age and to be honest, no one understood why. It made sense for Sammy, though.

He has always shown up to our family events with his hair slicked back and presents himself as if he is a billionaire CEO. He has always had this reserved yet sophisticated edge to him. No matter how much he physically grew and evolved, he always made the room laugh with his dry humor. He has that elegant, corporate-like charm that never turns off despite his surroundings.

I never doubted he would make a name for himself based off his intelligence and ability to see things from a money driven perspective. I always admired that about him.

Despite going against the grain and not joining his family business, he was determined to make a name for himself at a young age. Simply put, Sammy is a very smart young man who made a very dumb decision.

This experience has rocked him to his core and truly shown him his wrongdoings. I've spent some time with him over the year and he is extremely remorseful, compliant, and embarrassed. He knows he got greedy, and the "rich quick" mentality went too far, which is unacceptable.

He is a young man who still has his whole life to live, a future family to support, a name to re-create for himself and to be given the opportunity to turn his wrongdoings into right.

Unfortunately, we live in a world where everyone knows everything. He has faced heavy media scrutiny, a punishment he knows he deserves, and has been stripped of all he created for himself. He "had it all" and in a blink of an eye it was all taken away. To go through something like that with the maturity to own his wrongdoings and a future that requires deep physical and emotional rebuilding is enough reparation.

Sam has put his head down amid high media scrutiny, willingly has been compliant, and has remained consistent in being respectful throughout this process. I believe he knows it will take time to rebuild and recover from his wrongdoings and has done what has been necessary to begin taking those steps.

Please note Sam is very loved by his family, all we wish is that he learns from this and moves on. I hope he never loses his passion for success and can build a successful and rightful business in the future.

I ask that you are not harsh on him and consider his character throughout this whole process and his willingness to comply and move forward respectfully.

Respectfully yours,

Cassandra Mazzucco

2

# EXHIBIT 11

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

In writing of defense of Sam Miele, I want to express my encouraging and influential experiences when engaging with my nephew. Sam comes from a good, loving family. We through the years have spent numerous holidays and family occasions together. His humor, wit and kindness always stand out when I think of Sam and the memories we have together. I know my nephew Sam and his soft side. His love for animals had him taking in strays over the years and giving these animals help. This loving, kind individual is the Sam we all know and who he still is today.

As for the charges that are brought against him, I personally feel that his moral compass went askew when he became involved with certain individuals in the political arena. I have been around him since the guilty plea, Sam has been humbled immensely by this. Poor decisions, poor choices were made. One would have to ask for the consideration of this young man realizing his faults and poor choices and kindly consider this when making the decision for sentencing. In closing, I feel with the love and support of his family, Sam will be guided to embrace and accomplish a happy successful life because he has his whole life ahead of him.

Sincerely yours,

Debbie Mazzucco

# EXHIBIT 12

Honorable Joanna Seybert, U.S.D.J
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I am writing on behalf of my younger brother, Sam Miele, and his upcoming sentencing for the
wire fraud crime that he has plead guilty to. Growing up six years older than Sam, I have always
found myself in the role of being protective of him and wanting the best for him and his future.
Although Sam may carry himself with a strong and tough exterior, those who know him best
would say there is a quiet and more contemplative nature to his personality. He may not always
be outwardly showing his fears and worries, but in the one on one moments at home, he allows
these thoughts to be expressed. I remember the day he took his drivers test and had failed, but
my mom had planned a surprise party to celebrate him passing. It was evident very quickly the
disappointment and embarrassment Sam felt upon entering our house to a surprise party, but
Sam quickly rebounded and presented himself outwardly in a positive and happy manner. I
believe Sam has been using the same mechanism now to deal with the situation at hand. Being
around him the past few months, it has become more and more evident that Sam has realized
the weight of his actions and the repercussions it will have moving forward in his career and life
overall. I hope that this crime and sentencing will not completely derail his future, but become a
defining moment for him to recognize his faults and make changes to better himself.

Thank you for your time and consideration.

Respectfully,

Amanda Miele

# EXHIBIT 13

Dear Judge Seybert,

First and foremost my name is Benny Miele. As Sammy's older brother I can honestly say what a great man he has grown to be. I acknowledge the shameful things he has done, and I believe he has learned his lesson. Sammy is one of the most intelligent men I've ever met and unfortunately, he has made a lot of mistakes. Due to the wire fraud, I have seen a tremendous change in my brother and hope in the future he is more mindful of the law. Sammy is not only intelligent, but he is loved by all his friends and family. Sammy is known for be the most silent in the room yet expresses his experiences and actions with integrity and passion when asked his opinion. Besides being around his family, Sammy enjoys golfing with his father, getting dinner with friends at local restaurants, and most importantly enjoys working. As of recent I have had the privilege of working side by side with my brother and it has been nothing but a blessing. Sammy is professional and his qualities in the workplace are not limited. The young man has expressed what a tremendous mistake he has made in the past couple of years and has been as hard as one can be to his self being. Sammy is a great man, brother, and has many cousins that love him just as much as his sister and I. We appreciate you taking the time to read this letter and hope you see what we all see in Sammy.

Respectfully,

Benny Miele

# EXHIBIT 14

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I have known Samuel Miele as a friend for over 11 years.  I was surprised to hear about the present case since I have always believed Sam to be a person of good character.  Based on my assessment of Sam, I am happy to write a letter of reference on his behalf regarding this current matter.  While I understand the gravity of the charges, I am hopeful that the Court will show some leniency during the sentencing process.

Sam Miele has been a solid person in the years I have known him.  He has always shown me his full support and friendship throughout many stages of my life, and I have watched him demonstrate the same care, concern, and loyalty to his family members who have similarly relied on him in various ways.

While his recent behaviors and decisions have surprised me, I have no doubt that Sam will accept responsibility for his actions and that this situation will make him stronger and wiser.

I appreciate Your Honor's consideration of this letter when making your sentencing decision.


Respectfully Yours,

Joseph A. Miele, Jr.

# EXHIBIT 15

Honorable Joanna Seybert, U.S.D.J.

Alfonse M. D'Amato Federal Building

United States District Court

100 Federal Plaza, Courtroom 1030

Central Islip, New York 11722

Dear Judge Seybert:

Thank you for the opportunity to allow my voice to be heard by this court.  I am Sam's mother and he is the youngest of my three children.   Sam growing up was an excellent student and always represented himself and our family well in our small community in New Jersey.

I am aware of the charges he has plead guilty to and is being sentenced for. Since the proceedings, Sam had returned home and continues to show his understanding of the depth of his mistakes and has taken full responsibility for his actions.  Sam places no blame on anyone other than himself and for this I am proud. The sadness I feel is nothing in comparison to the anger I feel towards my son.  He was raised with firm Christian values and his actions have hurt not only himself but our family as a whole.

Sam is a kind and compassionate young man.   When my aging parents were going through the final months of their lives, he would visit them three to four times weekly. He did this out of respect for my father and his wish to be by his side during the end his life.  Sam is considerate and always shows up for his friends and our family.  Sam volunteers with a major food bank in New Jersey, supporting food insecure communities.

Sam has always been drawn to our government.  While attending St. John's University, he was active on campus.  An internship with a political leader further fostered his interest.  Upon graduation, he worked at the capital and further learned about Washington DC.

In conclusion, this situation has been extremely stressful for our family and all those affected. If I can say anything positive about this mess, it is that I have watched my son become a man. From the start he has accepted the situation, has been truthful and cooperative with all. Please do not let his mistake define him, but see him as the son, the brother and the friend as we all do.


Respectively yours,

Lisa A. Miele

# EXHIBIT 16

# CHATHAM DISPOSAL CO.

**P.O. Box 374**
**2231 Millburn Ave**
**Maplewood, NJ 07040**
(973) 379-1268 / (973) 763-3577
Fax (973) 763-1237
www.chathamdisposalcompany.com
customerservice@chathamdisposalcompany.com

Honorable Joanna Seybert. U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza Courtroom 1030
Central Islip, N.Y. 11722

Dear Judge Seybert:

My name is Paul Miele - I'm Sam Miele dad
Thank you for taking time to read this letter.
Sam is my youngest of three children. His sister
Amanda is the oldest - she's 34 and his brother
Benny is 30 years old. I have taised my children
to love each other - work hard. Be respectful of
others and always do the right thing. These
are all very important to me. When Sam
was brought up on these charges my first
thought was no way. I was sick to my
stomach - when he pleaded guilty my feeling
got much worse. But its not about me
its about Sam and he knows hes wrong
and I know he is remorseful. After Sams
Arrest he moved back to N.J. to live with
his mother for a little over a year

# CHATHAM DISPOSAL CO.

**P.O. Box 374**
**2231 Millburn Ave**
**Maplewood, NJ 07040**
(973) 379-1268 / (973) 763-3577
Fax (973) 763-1237
www.chathamdisposalcompany.com
customerservice@chathamdisposalcompany.com

Now He Lives above My office in Maplewood N.J.
He Now Works in My office and selling some
RealEstate for keller Williams in Summit N.J.
Im Happy That He is Learning The Family Business
with me, my son Benny And His Cousin Joe Miele
He Represents The fourth Generation in THE
Garbage Business, I know Sam is
Remorsefull And Will Respect and
Accept THE Punishment you Hand down!
I Told Him He Will Learn From His
Failures as much as from Successes.
He Still Has A Loving Family Behind Him
And A Great Life Ahead. Sam is A good
Person - a Great Friend - and My Son
I Love Sam and Even THough Hes Wrong
I Am Very Proud of THE Way THat He
Has Carried Himself since His Arrest
Thank You - Your Honor For Your Time
I Appriciate Your Service
Respectfully Yours
Paul Miele Sams dad!

# EXHIBIT 17

**ANTHONY MOLINARO**
**P. O. BOX 692**
**SPRINGFIELD, NJ  07081**

October 2, 2024

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I am writing to you as a family friend to advocate for Sam Miele.  I have known Sam's father for 40 years, he is like a brother to me, and I have been a witness to Sam's upbringing and growth for his entire life of 28 years.  It is an honor to vouch for the Miele character in my time knowing them.  The Miele family is made up of members who have always displayed qualities of love, compassion, honesty, integrity, and responsibility.  Sam comes from a close knit family, raised by parents who believe in kindness, respect, honesty, and commitment.  I have seen many acts of selflessness, generosity, compassion, and empathy within all the Miele generations.  I have observed such qualities within Sam during his lifetime of personal endeavors.  I have seen him grow into an admirable young man who has made a horrible mistake and shown a lapse in judgment.  Within the last two years Sam has proven to genuinely regret his crimes.  I have beared witness to the negative impact this has had on his family.  I know Sam is not thinking of himself in this trial, however, thinking of his mother, father, siblings, colleagues, and all of those he has affected and disappointed.  Sam is not a threat or harm to society and I believe that he is of a character who is deserving of your consideration. I ask you to find it in your heart to give Sam a fair judgement and allow him the chance to prove that he has within him all the honorable values his family has raised him to have.

I thank you for your time and the opportunity to speak on the behalf of Sam and the Miele family.

Respectfully,

Anthony Molinaro

# EXHIBIT 18

HONORABLE JOANNA SEYBERT, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I Am writing to you on Behalf of Sam Miele. I Have Known Sam from the Time he was Born. His Father Paul and I Have Been Friends For over 40 years. Growing up Sam would come to my Beach Home in Avalon N.J. with his Family a Few weekends a year. He was Always Respectful and considerate, in my Family's Presence. He was a Happy go lucky Kid, and Always Playing Practical Jokes. Although Sam and I lost contact as He Became An Adult, we would still see each other at His Family gatherings. In my mind He will always Be That Respectful young man That would go out of His way To greet my wife and I.

In closing I Just want to say, That as young adults starting a Career we all tend to Make mistakes. Sometimes our mistakes are severe and we Need to Suffer The consequences. With That Judge Seybert I ask you to consider Being Lenient Towards Sam's Punishment. I Believe Sam Already Suffering a great deal By Tarnishing His Career and Reputation As a Trustworthy Person. He is Suffering From The Embarrement He caused Himself His Family, and His Community. Therefore Judge Seybert I ask you if you could Find a Place in your Heart To Be Lenient Towards Sam on His Sentencing DAy.

We all Pray giving Sam a Second Chance In Life, He will make The Right choices From Here on End.

Respectfully Yours,
Louis A. Napolitano
Louis A. Napolitano

# EXHIBIT 19

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert,

I am writing to you on behalf of Samuel Miele, who will soon be sentenced for wire fraud. I have known Sam for years, and despite his recent actions, I want to express that he is a good person who has made some unfortunate decisions.

In the time that I have known Sam, he has shown qualities of integrity, dedication, kindness and loyalty. While I do not excuse his conduct, I believe that this offense does not fully reflect the person I have come to know. Sam has always been someone who is there to listen and help a friend. His generosity and sense of responsibility have always stood out to me.

I acknowledge that Sam has pleaded guilty to the crimes he committed, and I understand the seriousness of these charges. However, I also hope that you will consider his positive traits and the potential for him to learn from this experience. He has already faced significant consequences and challenges due to his actions, and I am confident that he has already used this as an opportunity for personal growth.

I immigrated to the United States from Ivory Coast years ago and work in the kitchen at a small hole-in-the-wall bar called Captains in the great city of New York. During my time here, I have experienced racism, disrespect and countless situations with others because of my accent and skin color where many look down on me as just "some cook." That is not the case with Sam.

Since the day I met him, he has always had my back no matter what in these situations. Whenever I need anything, large or small, he is there for me. He has taught me that although we're all different, whether in our political views or race or class, we must all treat each other with respect – and he is a shining example that there really are good, authentic people in this world. As you know, your honor, that is hard to come by these days.

I have witnessed on numerous occasions in this past year that when people ask him about his legal troubles, he always blames himself – and himself only. Not outside political factors or parties that I personally believe have had a negative influence since the start of his political career. Even when others try to support him, or defend him by blaming the "liberal DOJ," Sam has snapped back – very firmly yet respectfully – to stop with that nonsense. He has repeatedly made it clear that he deserves this and that he is going to make this right, whatever it takes.

Sam is one of smartest people I've ever met. And from what I understand, his time in politics began at a very young age, around his early 20's. What I've come to learn during my time here in the United States is that the politics here is dirty. I believe that at such a young age when you around that power and greed, you unfortunately absorb all of it around you as you get older and it can lead to bad decisions down the road. I've expressed this belief to Sam, but he continues to tear up and dismiss it. Again, he does not blame anyone else.

Between you and I, your honor, he does not forgive himself – and probably never will. And it kills me to see how much he beats himself over this. Going through something of this magnitude, as well as major media coverage, is a large punishment in of itself with lasting effects regardless of how he is sentenced. I can see the struggle in his eyes and there is a major part of him that is just dead.

Yet through all of this, to this day, Sam still doesn't hesitate to ask how I AM doing or if I NEED anything.

I sincerely hope you can understand that his mistake does not define who Sam Miele is at all. I believe that Sam has the ability to, and will, contribute positively to society and continue to be the person I know him to be – a person with good intentions who always sticks up for those less fortunate. And I will always be here for him, rooting for him, to make sure he comes back stronger – like he always has for me.

Thank you for considering my letter. I trust that you will make a fair decision based on the facts and Sam's character, and I appreciate your time.

Respectfully yours,
Djoman Cyrille Ncho

EXHIBIT 20

Honorable Joanna Seybert, U.S.D.J
Alfonse M. D' Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722.

Dear Judge Seybert:

I would like to begin my letter by first off introducing myself and how I met Samuel Miele. I met
Samuel Miele through a family friend in Kip Bays, New York City. I was not familiar with the
neighborhood and did not know many individuals that were living off of third avenue. My family
friend who attended Saint John's University with Sam were currently roommates together in
Kips Bay. I grew up in Nashville, Tn so New York City was a big move for me, and having Sam
include me and introduce me to so many great people and build our friendship is one of the
reasons I am still in New York City. Sam has opened his doors to my friends over the years. He
hosted complete strangers to him with no hesitation. Sam is unbelievably generous and always
goes the extra mile to make sure his family and friends are more than comfortable. I understand
that Sam has pleaded guilty to committing wire fraud in the act of soliciting financial
contributions for George Santos campaign. I also understand that Sam is a young man with a
long career ahead of him and how this mistake at a young age can damage his career
elsewhere. I know the character Sam will become out of this situation due to the man I have
seen throughout our friendship. Sam is a family man that has a large family throughout the north
east. I understand the circumstances of the crimes committed and how this looks from a larger
audience. I also know that Sam will have to suffer to some degree a punishment due to his
fraudulent actions. Sam knows his actions were wrong and seeing what I have seen from Sam
as a true friend, I believe he will have large success in his next endeavors outside of the
situation at hand.

Respectfully,

# EXHIBIT 21

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Joseph Pennella
14 Glennon Farm Lane
Lebanon, NJ 08833
(973) 868-8425
9/13/2024

Character Reference for SAMUEL MIELE

Dear Judge Seybert,

I am writing to offer a character reference for Samuel Miele, who is currently before the court regarding federal charges for actions orchestrated by George Santos. My intention is to provide you with insight into Samuel Miele's character, values, and contributions that I have witnessed, which I hope might offer a fuller understanding of who they are as a person.

I have had the privilege of knowing Samuel Miele for a little over a year in a strictly personal way. Throughout this time, I have consistently observed qualities in Samuel Miele that reflect changes in his integrity, and dedication to moving forward.

While I understand that Samuel Miele is currently associated with a different crowd, I believe it is crucial to consider Sam's past actions and character. He has faced significant personal challenges and has shown resilience and a desire to better his network and associate with different people. Samuel has expressed deep remorse for his actions and is committed to making amends and addressing any issues that led to this situation.

Samuel Miele, since I have met him, has always demonstrated a strong sense of responsibility and a deep commitment to his family business. For example, Samuel had shown exceptional dedication, in organizing social events to create a community he'd like to be more affiliated with. This commitment is indicative of their character and the values they hold dear.

In addition to their professional affiliations with his family business and community contributions, Samuel Miele has been a supportive and caring individual in their personal relationships. They have shown themselves to be a reliable friend always on time and a devoted respectful son to his father, offering both emotional and practical support to those in need.

It is important to acknowledge that Samuel is not defined solely by the current legal situation. They have expressed deep remorse and taken steps to make amends for their actions. I firmly

believe that their remorse is genuine and that they are committed to making positive changes moving forward.

Given my extensive personal experience and friendship with Samuel, I am confident in their potential for reconciliation and their capacity to contribute positively to society in the future. I sincerely hope that the court will consider Samuel's positive attributes and his commitment to making amends when determining an appropriate outcome. Second to last, It is important to acknowledge how heartbreaking it is to see a young man be misled and face such challenges while navigating life.

Thank you for taking the time to read this letter. I appreciate your consideration and understanding of Samuel Miele as you make your decision.

Respectfully,

Joseph S. Pennella

# EXHIBIT 22

Honorable Joanna Seybert, U.S.D.J.
Alfonse D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

10/3/24

Dear Judge Seybert,

I'm writing on behalf of Sam Miele, one of my son's oldest and dearest friends.
Needless to say, I was beyond shocked when I heard what happened and then read all the resulting articles about him and what he did.

I was- and am- extremely disappointed in him and his lack of good judgement.

In my opinion, a lack of good judgement is what got him in this mess in the first place.

Please let me start at the beginning:

While my son, Tyler, was in college , I finally left an unhappy marriage and moved to Santa Monica, California where my daughter has lived for the past 20 years. When Tyler graduated, he moved to CA and lived with me but after 6 months, was absolutely miserable , hadn't found a job yet, and knew he wasn't meant for the West Coast.

Tyler always dreamed of working in NYC and wanted to move back East desperately. Without a job and any real money, there was no realistic way he could move back home. I had just paid for him to move to California and I certainly didn't have a lump sum to give him which he would have needed to secure an apartment and get himself on his feet if he moved again.

Sam came to the rescue and offered him his couch in his very tiny NYC apt and Tyler jumped at the chance. I was so grateful because I hated seeing my son so unhappy.

They became roommates and every time I would come back to NY/NJ to visit family and friends, I would spend a lot of time at that shoebox of an apt and also out with both Sam & Tyler.
( i mention the apt size simply to illustrate again what a good friend Sam was/ is because there was barely enough room for one person, much less two, but Sam stepped up for Tyler. )

I got to know Sam very well during this time.

As strange as this probably will sound, I came to love him as my other son but at the same time I considered him a contemporary, a friend.

I am a diehard liberal and think Donald Trump is the worst thing that has ever happened to this great country. I do a lot of volunteering for the Democratic Party and could not for the life of me

understand how a good, solid human like Sam could support Trump & be an active part of MAGA.

I told Sam constantly that someone's character - or lack thereof- is extremely important.

I was disgusted and very taken aback because in all other ways, Sam was so solid and good.

But…I had some of the best, most illuminating political discussions with him and I enjoyed them immensely.

Sam is very smart, very savvy, when it comes to politics.

We spent hours going back and forth, literally debating every amendment in the Constitution. I always carried a purse sized copy of the Constitution just to annoy him… and to verify all of my views.

We bonded over politics although we were on opposing sides.

I always felt in my heart that Sam was a wonderful man who wasn't quite mature enough yet to quickly assess someone's integrity IE character.

When Joe Biden won the presidency, although Sam is my only Republican friend, he was the first one to call & offer his congratulations.

Every time I was with him, Sam told me how much I would love George Santos, that I had to meet him , that he was funny and lots of fun, etc.

When everything came out about Santos, I really believe Sam was as shocked as anyone. I know he stopped working for him and told me he had no idea what a liar he was.

This brings me back to my point regarding assessing someone's character. I wish I had met George Santos as Sam wanted me to before all of this came to be because I would have realized exactly what he was very quickly and would have warned Sam not to get involved with him.

Would he have listened?

I can't answer that but I do know that really seeing thru someone takes maturity. I'm a 67 year old woman. Sam is a 28 year old man.

If he had had more life experience, more years, more wisdom, I don't think I would be writing this letter to you, Your Honor.

Sam is a very trusting soul and he genuinely loved his job and really thought Santos was going to go far in the House of Representatives.

I really feel that Sam got carried away with everything, quite frankly. I'm not excusing him whatsoever- what he did was terrible and SO UNLIKE HIM.

Let's be candid here.

Under Trump, the Republican Party has turned into a lying, devisive machine. I think there was a lot of unsavory people around him and a lot of dishonest activities going on and Sam got caught up in it all.

After a year, Sam moved out of that tiny, shared apartment that my son stayed in for another year, and moved to a bigger and better place. Then he moved again… to an even more luxurious apartment. I would always tease him and tell him that, like the Jeffersons, he was "movin' on up."

He got caught up in that life and unfortunately, it brought him down.

When you constantly surround yourself with unsavory characters you're going to turn into an unsavory character… and I don't even think Sam realized the enormity of it all until it all came crashing down.

More than anything, I was shocked to learn he had impersonated someone else and charged credit cards without authorization.

He is a really good , caring person who made a terrible mistake. He devastated his parents and I know in my heart that that upsets him more than anything.

Tyler and I have had Christmas dinner with his family and they are lovely, kind people. Our family is spread across several states and they didn't want us to be alone- just the two of us on Christmas- so in one more instance of kindness, they insisted we join them for the holidays.

Sam has been an amazing, caring friend to both me and my son.

I can guarantee you two things, Your Honor.

Again, he comes from a lovely family and has been taught solid morals and values. He's a caring human being who would do anything for the people he cares about.
He made a huge mistake but he will never do anything like this again.
Sam has learned his lesson.. A very big lesson.
One and Done.

The second thing I can guarantee is that
you will never see his face in yours- or any other judge's - courtroom ever again.

This has affected his life in so many negative ways and he feels such remorse, especially the way his actions  hurt his family.

Sam is a good man and he will turn this negative part of his life into something positive and constructive, I can promise you.

Please don't send him to prison. He has never been in trouble before. He will never be in trouble again.

Prison would break him.

I know I'm going to sound like a typical Mom here, but he's a good boy who did some bad things-

I would never presume to tell you what to do but if I may please make a suggestion:
I think Sam would excel beyond everyone's wildest dreams in a community service situation.

We are all human and we all make mistakes.
Sam made a big one but he's very ashamed and very remorseful.

Most importantly, Sam has taken full responsibility for his actions.

Thank you so much for taking the time to read this , Judge. I know you're busy and I appreciate your willingness to read our letters on behalf of Sam Miele.

Respectfully yours,

Meredith Pilar

1 Harborside Place
Apt 434
Jersey City, N.J.
07311

973-493-0419

# EXHIBIT 23

Honorable Joanna Seybert, U.S.D.J. Alfonse M. D'Amato Federal Building United States District Court
100 Federal Plaza, Courtroom 1030 Central Islip, New York 11722

Robert Tyler Pilat
1 Harborside, Jersey City, NJ 07311 Apt 434
10/3/2024

Dear Judge Seybert,

I am writing to offer my thoughts on Sam, whom I have known for 8 years through St. John's University. I have always known Sam to be humble, supportive, honest, hard working and have witnessed firsthand his dedication to his family and friends. Although I fully acknowledge that Sam has pleaded guilty to wire fraud, specifically impersonating a high-ranking aide to solicit financial contributions under false pretenses, I would like to offer insight into the person I know.

In my experience, Sam has shown qualities of integrity, intelligence, generosity, and friendship. One example that stands out was when my family was experiencing a lot of hardship and Sam took me in as a brother and part of his family. This moment demonstrated to me the depth of his character and his sincere care for others.

I also understand that Sam is facing the consequences of his actions, having already suffered the loss of reputation and standing at the beginning of what could have been a promising career. These events have profoundly affected him, and I believe they have caused him to reflect deeply on the choices that led to this moment.

While I in no way wish to minimize the seriousness of his crime, I do believe that Sam is capable of learning from this experience and growing as a person. His integrity, work ethic, personal relationships show that there is much good in him, and I hope that this will be considered in determining his sentence.

I respectfully ask that Your Honor take into account these qualities when evaluating Sam's case. I believe that leniency will allow Sam to atone for his mistake in a way that still preserves the potential for him to make positive contributions to society.

Respectfully,

# EXHIBIT 24

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722

Dear Judge Seybert -

I am writing to you regarding the sentencing of my good friend, Sam Miele. I would like to start this letter by acknowledging I am aware of the charges to which Sam Miele has plead guilty - committing wire fraud by impersonating a high-ranking aide to the Speaker of the House and charging individuals' credit cards without their authorizations. While Sam has entered this guilty plea, I truly believe in the good that our US justice system is, and that Sam's overall character up until this point in his life will be judged along with this charge.

Sam and I met in college, at St. John's University as both of us were involved in Greek Life; this was a community within the community that most college campus' offer. Sam is a few years younger than I, so it wasn't until post-graduation where our friendship blossomed. This point in and of itself holds a lot of weight to me and my personal relationships as most friendships substantially dwindle post-college, where all the time in the world belonged to you, before the real world and all its obligations get thrown at you.

As I am now approaching my 30th birthday, Sam has been involved in most, if not all, of the small and major milestones in my life – from house-warming gatherings, New Years celebrations, long holiday weekends, birthdays, to my wedding this past year.

Sam has always been one of my most generous friends - especially with the time he will give a friend or the listening ear and helpful advice he provides. There was a particular year where Sam and I lived around the corner from each other in Manhattan, and those were some of the best times in our friendship where we could just get together quickly after work to catch up and check-in with what is going on in each other's lives. I distinctly remember when I met my now husband, I caught up with Sam a couple weeks after and was telling Sam about this new man in my life. Sam couldn't have been happier or more supportive for me and that is one of the qualities that makes Sam such a genuine person. He has and will always celebrate and appreciate his friends.

Sam and I both lived in Manhattan in our early twenties in the midtown area, and while we could see a lot of our friends staying in that college mindset, we really got along because of the ambitious, inspiring and thoughtful conversations we would have regarding all topics from life goals (near and far), how to better our current situations and create the best roadmap for our future selves, and how each other's goals are progressing along the way. This is not to say that our conversations were always serious – as there have been many laughs and good times along the way; but with these two points combined - I have found a true friendship with Sam. One that is made to better each other as we have fun, but also hold each other accountable. I believe you should surround yourself with

people who are like-minded and can empower each other to be the best versions of yourselves, and Sam is one of those people.

I hope that this letter is considered when deciding Sam's sentencing - I believe he truly is a good person, and this guilty plea should not define him.  I sincerely thank you for taking the time to read this letter.

Respectfully yours,
Joanne Preece

# EXHIBIT 25

September 29, 2024

Honorable Joanna Seybert, U.S.D.J.
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza, Courtroom 1030
Central Islip, New York 11722


Dear Judge Seybert,

I am writing this letter on behalf of my nephew, Sam Miele.  I am aware of the crimes that Sam has pleaded guilty, but I would like to vouch for Sam and his character. Sam has always been a loving son, grandson, brother, nephew and friend.

Sam comes from a close-knit family with core values that represent kindness, respect, hard work and perseverance.  He has always been respectful, intelligent, disciplined and loving. Sam worked hard through college and had many passions, one being golf (often played with his father and grandfather). Sam has strong relationships with his parents and siblings, as well as his extended family.  I believe Sam clearly had a lapse in good judgment and has endured the serious consequences as a young professional and man at the beginning of his career.

My sincere wish is that Sam can move forward from this indictment and is able to become a respectable member of society again. I know Sam has learned many lessons from this situation and I hope you are able to see Sam for the young man he is and who he has a chance to become.


Respectfully,
Angela Stamnes